UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CRYSTAL LEE WHITE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:20-CV-249-JRG-HBG ) |
| KILOLO KIJAKAZI[1], Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Judge of Plaintiff's Motion for Judgment on the Pleadings [Doc. 20] and the Commissioner's Motion for Summary Judgment [Doc. 24].

Crystal Lee White ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **RECOMMEND** that Plaintiff's motion for **Judgment on the Pleadings** [Doc. 20] be **DENIED**, and the Commissioner's motion for Summary **Judgment** [Doc. 24] be **GRANTED**.

I. PROCEDURAL HISTORY

On April 11, 2018, Plaintiff protectively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401–403, claiming a period of

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

disability that began on **May 1, 2017**. [Tr. 57–58, 154–55]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 99–100]. A hearing was held on November 8, 2019. [Tr. 32–56]. On November 27, 2019, the ALJ found that Plaintiff was not disabled. [Tr. 7–26]. The Appeals Council denied Plaintiff's request for review on June 24, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on August 28, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2022.
>
> 2. The claimant has not engaged in substantial gainful activity since May 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following "severe" impairments: degenerative disc disease of the lumbar spine, obesity, depression and anxiety (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except the claimant requires a sit/stand option or postural adjustment at the workstation at about 30-minute to 1-hour intervals. She can perform postural maneuvers (balancing, stooping, kneeling, crouching, crawling) and she must avoid concentrated exposure to industrial hazards (unprotected heights, moving machinery, etc.). The claimant is limited to simple,

2

routine, repetitive tasks. She must have no more than occasional interaction with the public, co-workers and supervisors; and she must have no more than occasional changes in the work routine.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on March 23, 1988 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2017, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 10–21].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

3

544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that

4

conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

5

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1). The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V.  **ANALYSIS**

Plaintiff argues that the ALJ's physical RFC determination is not supported by substantial evidence because the ALJ failed to further develop the record after Plaintiff's condition worsened and, instead, interpreted the raw medical data himself. [Doc. 21 at 9]. Plaintiff also argues that the ALJ failed to properly consider Plaintiff's allegations and that he failed to adequately explain his analysis. [*Id.* at 15]. Plaintiff requests for the Court to enter an order vacating the Commissioner's final decision and remanding the case for further administrative proceedings including, but not limited to, a *de novo* hearing and a new decision. [*Id.* at 18]. The Commissioner maintains that the ALJ complied with the required legal standards and that his findings are supported by substantial evidence in the record. [Doc. 25 at 9]. The two issues raised by Plaintiff will be addressed in turn.

A.  **ALJ's Development of the Record**

Plaintiff's first argument is that the ALJ failed to meet his duty to sufficiently develop the record. Specifically, Plaintiff argues that the ALJ's physical RFC finding was improper because

6

the ALJ "failed to obtain any new opinion, and, rather, found a stale opinion partially persuasive and then used his own lay opinion to interpret new medical evidence." [Doc. 21 at 9]. Plaintiff cites to consultative examiner Dr. Stephen Goewey's opinion from June 28, 2017 in which he opined that Plaintiff would be able to "sit between four to six hours daily, stand and walk at least four hours daily, lift and carry at least 20 to 30 pounds frequently." [*Id.* (citing [Tr. 408])]. The ALJ found that this opinion was "partially consistent with and supported by the medical evidence of record." [Tr. 17]. The ALJ found that the opinion was "roughly consistent with light work, but Dr. Goewey's opinion does not assess non-exertional limitations, nor does it take into consideration results of recent testing." [*Id.*].

Plaintiff explains that "Dr. Goewey's opinion was issued two days after imaging of the lumbar spine showed minimal L5/S1 disc space height loss, bilateral renal calculi measuring up to 3mm, and no acute lumbar spine abnormalities." [Doc. 21 at 10 (citing [Tr. 578])]. Dr. Goewey stated that "improvement [was] expected accessing compliance with care." [Tr. 408]. Plaintiff alleges that Dr. Goewey was unaware that Plaintiff's condition subsequently worsened. Essentially, Plaintiff argues that the ALJ erred because he partially relied on Dr. Goewey's opinion even though it was outdated and failed to encompass a substantial part of the medical record.

Plaintiff points to numerous portions of the record to demonstrate that her physical condition deteriorated. This includes, among other things, evidence of Plaintiff experiencing occasional numbness in her left leg; tenderness to palpation of the spine and positive sciatic notch; back pain; narrowing of the L4/L5 interspace; marked narrowing of the L5/S1 interspace and minimal lumbar lordosis' pain about the lower lumbar region; restricted range of motion of the lumbar spine; atrophy of the paraspinous muscles; and a mild limp in both legs intermittently. *See* [Doc. 21 at 10–11 (citing [Tr. 611–612, 415–17, 600, 607, 594–6, 598])]. Plaintiff also cites to an

7

MRI of the lumbar spine showing "moderate L4/L5 and mild L5/S1 facet arthropathy with potential therapeutic targets." [*Id.* at 11 (citing [Tr. 594])]. Additionally, Plaintiff argues that she began to experience cardiac symptoms after seeing Dr. Goewey. [*Id.* (citing [Tr. 473, 494, 595, 48])]. Thus, Plaintiff claims that her condition "clearly" deteriorated after Dr. Goewey gave his opinion. [*Id.*].

Plaintiff contends that the ALJ erred when he stated that Dr. Goewey's opinion was "roughly consistent with the record." [Tr. 17]. Plaintiff then argues that the RFC finding of the ALJ limiting her to light work—and which was partially based on Dr. Goewey's opinion—is unsupported by any actual medical opinion in the record. [Doc. 21 at 11]. In fact, Plaintiff points to the opinions of the state agency consultants who seemed to suggest that Dr. Goewey's opinion was more indicative of opining to *medium* level work. [*Id.* (citing [Tr. 66, 83])]. Plaintiff argues that "[t]he ALJ's physical RFC is ultimately not supported by any actual medical opinion." [*Id.*]. The Court finds this argument to be perplexing because it appears that Plaintiff is arguing that the ALJ should have found her to be capable of working at an even *greater* level of intensity than what was determined based on the medical opinions relating to Plaintiff's physical health conditions. It appears that the ALJ actually reviewed the more recent evidence and decided to give the Plaintiff the benefit of the doubt, as will be explained in detail below.

Plaintiff argues that the ALJ took it upon himself to interpret the new medical records and the apparent worsening of her condition without any updated medical opinions to inform his RFC finding. [*Id.* at 11]. Plaintiff states that the ALJ's purported actions were improper because "[a]n ALJ is simply not qualified to interpret raw medical data in functional terms. [*Id.* (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008))]. Plaintiff continues, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly

8

submitted medical opinions, the ALJ cannot substitute [his] own lay 'medical' opinion for that of a treating or examining doctor." [*Id.* (quoting *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013))]. Plaintiff continues:

> [w]here the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing.

[*Id.* at 13 (quoting *Deskin*, 605 F. Supp.2d at 912)]. Plaintiff states that *Dreskin* "applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." [*Id.* (quoting *Kizys v. Comm'r of Soc. Sec.*, 3:10-CV-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011))].

Plaintiff argues that *Deskin*'s principles should apply here because the ALJ made an RFC determination based on an incomplete and underdeveloped medical record. [*Id.*]. Plaintiff suggests that the ALJ should have sought additional medical guidance to analyze Plaintiff's worsening condition—citing to Plaintiff's deteriorating spinal condition and new cardiac condition. [*Id.*]. Plaintiff alleges that the record and the fact that the ALJ provided a sit/stand option and occasional postural movements indicate a worsening of Plaintiff's condition that needed further development through additional medical examinations and opinions. [*Id.*]. Plaintiff alleges that this error was not harmless because "it is unclear that Plaintiff can perform the demands of full-time work at the light exertional level[,]" and "the [Vocational Expert] testified that if Plaintiff needed a sit/stand option every 15 to 20 minutes, such a limitation would be work-preclusive." [*Id.* (citing [Tr. 53])]. The Court disagrees with Plaintiff's contentions that the ALJ

9

failed to develop the record, that partial use of Dr. Goewey's opinion made the ALJ's decision fatally flawed, that the ALJ was obligated to require an additional consultative examination, and that the ALJ improperly analyzed the other medical and nonmedical evidence. Further, the Court finds that the ALJ's decision is supported by substantial evidence in the record, and the record was not fatally undeveloped.

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400–01 (1971)). While the claimant bears the ultimate burden of establishing that she is entitled to disability benefits, the ALJ has an affirmative duty to develop the factual record upon which her decision rests, regardless of whether or not the claimant is represented by counsel. *See, e.g., Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, (6th Cir. 2010) ("This court has also long recognized an ALJ's obligation to fully develop the record.") (citation omitted); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (stating the ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing"). The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 404.1517.

Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). The Court notes that the ALJ had no "special, heightened duty to develop the record" in this case because Plaintiff was represented by counsel. *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002). Still, the ALJ has the ultimate responsibility to ensure that a

10

claimant receives a full and fair hearing, *Richardson v. Perales*, 402 U.S. 389, 411 (1971), which includes a duty to develop the record fully and fairly. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986).

"In making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008). In *Deskin*, the Northern District of Ohio found that "where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id.* While *Deskin* has been widely criticized as being overly broad, it has been interpreted to detail that "[s]uch general rule 'applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence.'" *Snell v. Comm'r of Soc. Sec.*, No. 3:18-CV-173, 2019 WL 3406435, at *3 (S.D. Ohio July 29, 2019) (quoting *Kizys v. Comm'r of Soc. Sec.,* 3:10-CV-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011)).

The Court finds that *Deskin* is not controlling in this case because the ALJ was not required to solicit a new consultative opinion. Plaintiff critiques the ALJ's partial use Dr. Goewey's opinion after finding it to be "partially consistent with and supported by the medical evidence of record." [Tr. 17]. However, the ALJ noted that Dr. Goewey's opinion did not assess non-exertional limitations, nor did it take into consideration the results of testing done after Plaintiff saw him— especially the MRI done in September 2019. [*Id.*]. Those reasons serve as the basis for the ALJ's decisions to rely on Dr. Goewey's opinion only partially and to include occasional postural limitations, a sit/stand option, and avoiding hazards in the RFC finding. *See* [*id.*]. Additionally,

11

the ALJ considered the medical opinions of agency medical consultant Dr. JoiSanne Richmond and Dr. Thomas Thrush who both saw Plaintiff prior to the recent testing. [*Id.*]. The ALJ found their opinions to be inconsistent with and unsupported by the medical evidence of record, and they did not adequately address the limitations imposed by Plaintiff's obesity. [Id]. That being said, the ALJ found their opinions to be unpersuasive for purposes of the RFC determination. [*Id.*]. In any case, these opinions were not the sole basis for the ALJ's analysis.

It is well-established that, when evaluating the claimant's RFC, the ALJ is not required to base his RFC findings entirely on a physician's opinion. *See, e.g.*, *Mokbel-Alijahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401–02 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the [residual functional capacity] based on her evaluation of the medical and non-medical evidence")).

The Court also notes that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Jones v. Colvin*, No. 5:13CV1781, 2014 WL 4594812, at *3 (N.D. Ohio Sept. 12, 2014) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)). However, agency regulations "impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Id.* The Sixth Circuit has squarely rejected the argument that the ALJ "improperly relied

12

on the state agency physicians' opinions because they were out of date and did not account for changes in [the claimant's] medical condition" where it is clear from the decision that the ALJ considered the subsequent evidence and "took into account any relevant changes" in the claimant's condition. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009). Such is the case here. This is evidenced by the ALJ's treatment of the medical opinions, which he found to not be wholly persuasive because they did not account for all of Plaintiff's limitations and which subsequently led to the ALJ providing additional limitations in Plaintiff's RFC.

An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined [the] RFC based on objective medical evidence and non-medical evidence." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (internal citations omitted). "Rather, it is the Commissioner's prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work." *Luukkonen v. Comm'r Soc. Sec.*, 653 F. App'x 393, 402 (6th Cir. 2016) (citing 20 C.F.R. § 416.929(c)(1), -(d)(2)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ). This is precisely what the ALJ did in this case. He identified the inconsistencies in the medical opinions related to Plaintiff's physical medical condition by reviewing various parts of the medical and nonmedical evidence, including Plaintiff's own subjective complaints.

In this case, the ALJ considered a multitude of factors in making his final RFC

13

determination. He evaluated and considered the opinions of Drs. Goewey, Richmond, and Thrush and adequately explained his reasoning for the weight he afforded to each one. [Tr. 17]. He considered the recent testing and imaging—including Plaintiff's September 2019 MRI—that were done after Plaintiff saw the previously mentioned physicians, and he incorporated more limitations into Plaintiff's RFC than what was suggested by their opinions, giving the Plaintiff the benefit of the doubt. [*Id.*]. In making the RFC determination—including the additional limitations—the ALJ also considered Plaintiff's obesity [*id.*], reported daily activities [*id.* at 19], and Plaintiff's hearing testimony. [*Id.*].

Ultimately, the Court finds that the ALJ did not err by failing to order a consultative examination in this case, nor was his analysis of the remaining evidence improper. The Court notes that Plaintiff possesses the burden to demonstrate that she suffers from a disabling condition. *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) (citing 20 C.F.R. § 404.1512(a)); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant.") (internal citation omitted). The Commissioner appropriately evaluated the medical opinions of record, and extensively reviewed the remaining evidence as detailed above. Further, the applicable regulations do not *require* an ALJ to refer a claimant to a consultative specialist. *See Landsaw*, 803 F.2d at 214; *see also Foster v. Halter,* 279 F.3d 348, 355 (6th Cir. 2001). It is not error to fail to obtain additional evidence where the record contains a "considerable amount of evidence" pertaining to the claimant's limitations. *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013). Therefore, Plaintiff's assertion that the ALJ failed to develop the record is without merit and does not constitute a basis for remand.

14

B.     ALJ's Treatment of Plaintiff's Allegations and Sufficiency of the Analysis

Plaintiff also argues that the ALJ failed to consider the "total limiting effects of Plaintiff's impairments, including all symptoms." [*Id.* at 15 (citing 20 C.F.R. § 404.1545(e))]. Plaintiff explains that

> [t]he ALJ must consider Plaintiff's daily activities, the location, duration, frequency, and intensity of pain, precipitating and aggravating factors, the type, dosage, effectiveness, and side effects of medications, treatment other than medication used for relief, any other measures used to relieve pain, and any other factors concerning functional limitations and restrictions due to pain.

[*Id.* (citing 20 C.F.R. § 404.1529(c)(3))]. Thus, Plaintiff claims that the ALJ failed to properly consider Plaintiff's allegations, and his analysis did not include an appropriate explanation for his analysis and decision. [*Id.* at 16]. As detailed in the prior section, the ALJ did—in fact—consider many of these factors and others in making his RFC determination and offered adequate analysis for that determination.

Plaintiff argues that she "is left to wonder what alleged symptoms did the ALJ find could be reasonably caused by her medically determinable impairments, and importantly, which of her symptoms were completely discounted as not being expected to be produced b her conditions." [*Id.*]. Additionally, Plaintiff asserts that the ALJ failed to explain why Plaintiff's statements were inconsistent with the evidence of record. [*Id.*]. Plaintiff states that this alleged error was harmful to her because a different outcome may have resulted had her subjective complaints been appropriately considered. [*Id.*].

"An ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted). Also, "[a]n ALJ's findings

15

based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In any case, the ALJ *did* consider Plaintiff's subjective complaints in addition to many other parts of the record. For this argument, Plaintiff relies almost exclusively on her subjective complaints which, as discussed, are not binding on the ALJ.

Plaintiff takes issue with the ALJ's statement:

> After careful consideration of the evidence, I find the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reason's explained.

The Court agrees that if one were to rely on this statement in isolation, that it would be insufficient. However, the Court has reviewed the ALJ's *entire* decision and finds that he reasonably explained his analysis.

For example, the Commissioner points to the ALJ reviewing "an unremarkable CT scan of Plaintiff's brain, and determin[ing] that [Plaintiff's reported] headaches did not amount to a severe impairment." [Doc. 25 at 10 (citing [Tr. 12, 355–60])]. Also, the ALJ reviewed x-rays showing no acute fracture or dislocation in Plaintiff's right knee and in her right-ankle after Plaintiff complained of pain in both areas. [*Id.* (citing [Tr. 13, 617–18])]. The ALJ did note that Plaintiff's back impairment was severe [Tr. 12]; however, the ALJ reviewed diagnostic testing as part of his finding that the back impairments did not cause Plaintiff's alleged levels of functional impairment, relying on lumbar x-rays in June 2018 and August 2019, the Plaintiff's ability to maintain normal posture and gait, and full active and passive range of motion in both arms and legs. [Tr. 15–16,

16

410, 416, 578, 596]. The Commissioner points to other many other portions of the record that the ALJ discussed and that provided support for the ALJ's analysis of Plaintiff's subjective complaints. Therefore, the Court finds that the ALJ considered Plaintiff's subjective allegations in relation to the record as a whole. Therefore, the Court finds that remand is not warranted on this point either and further finds that the ALJ's decision is supported by substantial evidence in the record and devoid of any legal or procedural defects that would require a remand of Plaintiff's case.

## VI. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[2] Plaintiff's Motion for Judgment on the Pleadings [**Doc. 20**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 24**] be **GRANTED**.

Respectfully Submitted,

*Bruce Guyton*
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).